# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-cv-414 |
| ) | JURY DEMAND |
| FELLOWSHIP CHURCH, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, Cincinnati Insurance Company (hereinafter referred to as "CIC"), pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and <u>Merrimack Mutual Fire Insurance Company v. Batts</u>, 59 S.W.3d 142 (Tenn. Ct. App. 2001), <u>perm. app. denied</u>, and would allege the following as its Complaint for Declaratory Judgment against the defendant, Fellowship Church ("Fellowship"):

## I. THE PARTIES

1. CIC is an insurance company incorporated under the laws of the State of Ohio, with its principal place of business located at 6200 South Gilmore Road, Fairfield, Ohio. CIC is a citizen and resident of the State of Ohio for purposes of 28 U.S.C. § 1332.

2. Fellowship is a religious organization operating as a church at property located at 8000 Middlebrook Pike, Knoxville, Tennessee 37909. It is a Tennessee corporation officially recognized as Fellowship Evangelical Free Church with its principal office located at 8000 Middlebrook Pike, Knoxville, Tennessee 37909. Fellowship' registered agent for service of process is Richard R. Dunn who may be served with

process at 8000 Middlebrook Pike, Knoxville, Tennessee 37909.  Fellowship is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

## II.  VENUE AND JURISDICTION

3. As will be more fully set forth below, CIC issued Policy No. CHU 221 20 00 to Fellowship Church, at its address of 8000 Middlebrook Pike, Knoxville, Tennessee 37909.  A claim against the policy has been submitted to CIC resulting from damage alleged to have occurred on or about April 27, 2011.  The damage claimed was for alleged damage to property located at 8000 Middlebrook Pike, Knoxville, Tennessee 37909.  Accordingly, venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and 123.

4. This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as well as <u>Merrimack Mutual Fire Insurance Company v. Batts</u>, 59 S.W.3d 142 (Tenn. Ct. App. 2001), <u>perm. app. denied</u>.  Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of interest and costs.  More particularly, the amount in controversy is in excess of One Million Dollars ($1,000,000.00).

5. An actual controversy exists between CIC and the defendant within the meaning of 28 U.S.C. § 2201, and this Honorable Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of CIC and Fellowship with respect to the issues raised herein.

## III.  FACTS

6. CIC issued a policy providing Commercial Property coverage under Policy

No. CHU 221 20 00 for the policy period of December 19, 2008 to December 19, 2011. The policy provided Commercial Property coverage for a building located at 8000 Middlebrook Pike, Knoxville, Tennessee 37909, but only pursuant to the policy's express terms and provisions. A true and exact copy of CIC Policy No. CHU 221 20 00 issued to Fellowship is attached hereto as Exhibit 1, and is hereinafter referred to as "the policy."

7. Fellowship claimed its building located at 8000 Middlebrook Pike, Knoxville, Tennessee 37909 was damaged by a storm on or about April 27, 2011, and notified CIC of the loss on or about March 5, 2012.

8. Mr. Steve Gibson with Fellowship advised CIC representative Danny Glasgow that Fellowship did not believe that it had any hail damage but that a representative of Titan Exteriors drove by the Fellowship building and told them that Fellowship did have hail damage.

9. CIC engaged the services of Roof Design Works ("RDW") to assist it in inspection and evaluation of the alleged roof damage. RDW provided its report on March 27, 2012, advising that while the metal roof had a few minor indentations from hailstone impact, the metal roof sustained no functional damage; that small cuts and punctures observed on wall flashing and membrane was caused by hail; and the EPDM membrane under the ballasted section of the flat roof should not be damaged by hail.

10. Fellowship provided a Proof of Loss to CIC on or about October 17, 2012, making an Actual Cash Value claim of $1,152,444.82, and planned to seek a supplemental claim of $1,000,000.00 within 1000 days. (Exhibit 2). The amount claimed was based upon an estimate prepared by Titan Exteriors, Fellowship's public adjuster.

11. CIC acknowledged receipt of the Proof of Loss and advised on November 1, 2012 that it could neither accept nor reject the Proof of Loss because it needed to evaluate the scope of repairs referenced in the Titan Exteriors estimate.

12. RDW was asked to review and evaluate Titan Exteriors' report. RDW agreed that additional metal caps and hoods were damaged by hail but could not determine whether the HVAC equipment impacted by hail required repairs. RDW disagreed that the ballasted EPDM roof required complete replacement and that hail damaged areas near the parapet walls could be repaired for approximately $1000.00.

13. Cincinnati thereafter estimated the Replacement Cost of covered damages to be $512,171.62 with an Actual Cash Value of $476,294.12, including replacement of Fellowship's metal roof, stucco repairs, exhaust fans and caps, and for repairs to the EPDM roofing caused by the storm. Payments totaling $467,294.09 for these items were made prior to or on October 7, 2013.

14. On November 5, 2013, Mr. Patrick Basile, Case Manager with Titan Exteriors (aka Titan Roof) wrote Cincinnati on behalf Fellowship Church to advise that there was a dispute over EPDM portion of the roof, that once resolved, would close out the claim.

15. On November 18, 2013, Mr. March Buchanan, P.E., provided his report to Fellowship Chuch. Mr. Buchanan found that the existing EPDM roof was at or near the end of its useful life, and that a complete removal and replacement was not warranted because of the April 27, 2011 storm.

16. On or about December 19, 2013, Titan prepared for Fellowship three options it contended were necessary to remedy storm damage to the EPDM flat roof

CT Fellowship Church Comp 150821
4208913761
Case 3:15-cv-00414-TAV-CCS   Document 1   Filed 09/16/15   Page 4 of 12   PageID #: 4

area, ranging from $317,516.35 to $534,876.16.

17. Cincinnati then engaged Rimkus Consulting Group, Inc. ("Rimkus") to evaluate and determine the cause and extent of the reported damage. It concluded that the ballasted area of flat roofing was not affected by hail impacts from the storm; the un-ballasted portion was possibly affected only in the area along the parapet walls; the repairs that had been made during its inspection restored the roof to its condition prior to the storm; and moisture intrusion in this area was the result of "long-term natural weathering of the EPDM surface, deferred maintenance, and/or deficient flashing conditions at roof transitions and appurtenances.

18. Cincinnati notified Fellowship of its position on September 5, 2014 concerning the claim for damages to the flat EPDM portion of the roof, and advising that the requested repairs are not covered under the terms of the policy.

19. On October 9, 2014, Mr. Chuck Howarth wrote Cincinnati on Fellowship's behalf advising of differences with the settlement offer and that he was being employed by Fellowship as its appraiser to participate in the Appraisal Process invoked by Fellowship.

20. Cincinnati acknowledged the Appraisal demand on October 23, 2014 but requested written notification of the differences comprising the alleged dispute in order for Cincinnati to determine whether there was a dispute as to the amount of the covered portion of Fellowship's loss.

21. On or about March 15, 2015, Mr. Howarth provided another Proof of Loss in the amount of $1,745,260.24 along with a report provided by Forensic Building Science, Inc., and his own estimate in the amount of $1,939,178.04.

22. Cincinnati acknowledge this unsolicited Proof of Loss on March 27, 2015 and informed the insured that the documentation provided required additional investigation, and that while it would consider the additional materials, it would do so under a full reservation of rights, including the right to rely upon is previously communicated coverage positions.

23. Cincinnati obtained assistance from Rimkus to review the additional materials. On July 22, 2015, it explained to Fellowship that certain items included Mr. Howarth's were not covered, and that while Cincinnati would agree to appraisal, it would not agree to participate in appraisal concerning the following scope items contained in the Howarth estimate:

- Items 1 – 3, 5 – 9, 12 – 18: These items address replacement of the entire EPDM roof covering.

- Items 21 – 22: The metal roof is predominantly 6:12 slope; therefore, these additional charges for steep roof should be removed.

- Item 49: Windscreen area measures approximately 1,265 square feet. Quantity of 1,720 square feet is excessive.

- Item 50: Includes repair of the entirety of EIFS walls. FBS did not make any recommendations concerning the EIFS cladding, nor did they quantify the hail-damaged and wildlife-damaged EIFS cladding. This is grossly excessive, since the actual hail damage to the EIFS walls was estimated to be approximated 100 square feet. Most of the walls were not damaged and some of the damage included damage from wildlife unrelated to hail damage, as stated in the FBS report.

- Items 51 – 54: These items address removal and replacement of metal fascia and soffit, which is not necessary since the EIFS cladding does not require replacement.

- Items 55 – 63: These items address damage to the interior of the sanctuary building, which was not related to the storm damage.

- Items 73 – 81: These charges are associated with the flat roof areas identified by Rimkus as not being damaged by the storm.

Cincinnati also reserved its right to deny payment even if an award was entered.

24. On or about August 7, 2015, Fellowship responded agreeing that some of the dispute was over the scope of the covered loss but probably agreed that the interior leaking was not caused by the storm and requested Cincinnati provide the name of its appraiser.

### III. ISSUES FOR DECLARATORY JUDGMENT

25. The building located at 8000 Middlebrook Pike, Knoxville, Tennessee 37909 is covered property under the policy, but the policy only provides coverage for losses subject to all policy terms, conditions, and exclusions.

26. The policy only provides coverage for losses occurring within a policy period, as referenced by the following policy provision:

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1**. We cover "loss" commencing:

 **a.** During the policy period shown in the Declarations, and

   \*  \*  \*

Thus, only losses occurring between December 19, 2008 to December 19, 2011 are covered, and any damage or loss that did not occur within a policy period for which coverage was provided is not covered. Under Tennessee law, Fellowship bears the burden of demonstrating its losses claimed occurred within a covered policy period.

27. The policy only provides coverage for risks of direct physical loss subject to policy limitations and exclusions as follows:

**3. <u>Covered Causes of Loss</u>**

CT Fellowship Church Comp 150821
4208913761
Case 3:15-cv-00414-TAV-CCS   Document 1   Filed 09/16/15   Page 7 of 12   PageID #: 7

**a. Risks of Direct Physical Loss**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the "loss" is:

**(1)** Excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions**; or

**(2)** Limited in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations;**

that follow.

"Loss" is a term defined by the policy as follows:

**9.** **"Loss"** means accidental loss or damage.

**b. Exclusions**

\* \* \*

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

\* \* \*

**(d) Miscellaneous Causes of Loss**

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Settling, cracking, shrinking or expansion;

**5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

\* \* \*

**(3)** We will not pay for "loss" caused by or resulting from any of the following:

**(3)(a)** through **(3)(c)** However, if an excluded cause of loss that is listed in **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

\* \* \*

**(c)** **Defects, Errors, and Omissions**

  1) An act, error, or omission (negligent or not) relating to:

     a) Land use;
     b) Design, specifications, construction, workmanship;
     c) Planning, zoning, development, surveying, siting, grading, compaction; or
     d) Maintenance, installation, renovation, repair, or remodeling of part or all of any property on or off the "premises";

  2) A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

\* \* \*

The damages claimed by Fellowship and referenced on The Howarth Group estimate and not associated with the items previously paid by Cincinnati do not amount to an accidental direct physical loss as required for coverage to apply and/or are specifically excluded by one or more of the above exclusions.

28. The policy contained the following Appraisal provision:

**2. Appraisal**

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

> The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we still retain our right to deny the claim.

Under the Appraisal condition, and under the laws of the State of Tennessee, Cincinnati has the right to contest issues of coverage, causation, and extent of policy liability.

29. According to the case of <u>Merrimack Mutual Fire Insurance Company v. Batts</u>, 59 S.W. 3d 142 (Tenn. Ct. App. 2001), <u>perm app. denied</u>:

   a. "An appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties." <u>Id.</u>

   b. The Appraisal provision "does not vest the appraisers with the authority to decide questions of coverage and liability." <u>Id.</u>

   c. The appraisal panel has no "prerogative to determine whether any particular loss claimed by [the insured] was caused by the [storm]." <u>Id.</u>

   d. All "disputed coverage and liability issues are best submitted to the courts before any dispute regarding the amount of loss is submitted to the appraisers." <u>Id.</u>

30. The Appraisal process is not appropriate to determine whether any loss was caused by the storm, and such disputes are best submitted to courts to resolve disputes of causation, coverage, and liability.

31. Cincinnati avers and alleges that the damages referenced above and included in The Howarth Group estimate preexisted the storm of April 27, 2011, or were not caused by the storm of April 27, 2011 and/or were excluded or limited from coverage by operation of policy exclusions, limitations and/or conditions. Accordingly, Cincinnati alleges and avers it is not obligated to pay for damages not covered by the policy, and the Appraisal process is not appropriate for resolution of the dispute until the Court resolves the issues of causation, liability, and damages.

32. Cincinnati avers and alleges that Fellowship, upon the discovery of damage, failed to comply with policy terms and conditions which require it to protect and preserve property.

33. Cincinnati avers and alleges that the purpose of the appraisal process is not to resolve liability issues. Rather, under Tennessee law, the purpose of the appraisal process is only to set the monetary amount of a covered loss. This Court is empowered and authorized to determine causation, coverage, and liability issues, and to resolve the conflicting questions of causation, coverage and liability which exist under the policy with respect to the above enumerated items of loss.

34. Cincinnati acknowledges differences in pricing exist between the covered damages referenced previously paid and those contained in The Howarth Group estimates. Cincinnati has named an appraiser as requested by Fellowship and will allow him to proceed in the appraisal except for the particular items addressed above. However, because Cincinnati disputes that the majority of damage claimed by Fellowship were caused by the storm and/or covered by the policy, it requests that this Court decide all issues of causation, coverage, and liability before submitting the

dispute over the amount of any covered loss to the appraisal panel as referenced in <u>Merrimack.</u>

**WHEREFORE**, the plaintiff, Cincinnati Insurance Company, prays as follows:

1. That the defendant be required to answer and appear herein;

2. That this Court adjudicate and declare that the damage beyond that identified by Cincinnati and/or its representatives is not covered by the policy;

3. That this Court adjudicate and declare all additional damage occurred outside the Cincinnati policy period; was caused by the defendant's violation of policy terms and conditions; and/or were caused by an excluded or limited Cause of Loss;

4. That this Court adjudicate and declare that the policy does not obligate Cincinnati to pay for amounts in excess of the amounts it has paid to date, and that the Court will resolve all issues of causation, coverage, and liability; and

5. For such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

_s/ E. Jason Ferrell_
**E. JASON FERRELL**
Registration No. 24425
Attorney for Plaintiff, Cincinnati Insurance Company

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
P. O. Box 23890
Nashville, TN  37202-3890
DIRECT:  (615) 630-7716
(615) 256-8787, Ext. 116
jferrell@bkblaw.com